**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **SHANNON KAYE WILDER** | § | |
| **Plaintiff,** | § | |
| | § | |
| *v.* | § | **Civil Action No. 3:13-CV-3014-P-BK** |
| | § | |
| **CAROLYN COLVIN,** | § | |
| **Acting Commissioner of Social Security,** | § | |
| **Defendant.** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION

Pursuant to the District Judge's referral, the undersigned considers the parties' cross-motions for summary judgment. For the reasons that follow, it is recommended that Plaintiff's *Motion for Summary Judgment* [Doc. 10] be **DENIED**, Defendant's *Motion for Summary Judgment* [Doc. 12] be **GRANTED**, and the Commissioner's decision be **AFFIRMED**.

## I.    BACKGROUND[1]

### A.  Procedural History

Shannon Wilder (Plaintiff) seeks judicial review of a final decision by the Commissioner of Social Security (Defendant) denying her claim for Disability Insurance Benefits (DIB) under the Social Security Act. On June 4, 2010, Plaintiff filed a Title II application for a period of disability and DIB, alleging disability beginning April 1, 2009. [Tr. at 149-151]. The claim was denied at all administrative levels, and she now appeals to this Court pursuant to 42 U.S.C. § 405(g). [Tr. at 1-5, 16, 17-32, 95-99, 101-04].

---

[1] The following background material comes from the transcript of the administrative proceedings, which is designated "Tr." and followed by the stamped page number(s).

**B.  Factual History**

Plaintiff was 48 years old at the time of her alleged onset.  [Tr. at 49].  She has attended college, but does not have a degree.  [Tr. at 43-44].  According to the testimony of the vocational expert, Plaintiff has worked as an office manager, a retail customer service representative, a medical billing and insurance coding clerk, an accounts collection clerk, and a patient account representative.  [Tr. at 78].

*Physical Evaluation*

Since December 5, 2005, Plaintiff has sought treatment at Walnut Grove Family Health Center from Dr. E. Charlie Ruby.  [Tr. at 240].  Plaintiff has made numerous visits to Walnut Grove, often complaining of moderate to severe shoulder, spinal, and back pain.  [Tr. at 240-310].  Dr. Ruby and other physicians diagnosed Plaintiff with myalgia, myositis, neuralgia, radiculitis, lumbago, cervical and lumbar spondylosis, cervicalgia, moderate to severe cervical spinal stenosis, degeneration of the lumbar or lumbosacral intervertebral disc, anxiety, restless leg syndrome, a neck and shoulder sprain, and shoulder pain.[2]  [Tr. at 256, 297, 299, 307, 389].  At various times, Dr. Ruby prescribed narcotic pain relievers, sleep medication, and anti-depressants.[3]  [Tr. at 297, 301, 309].

On August 2, 2010, at the request of the Social Security Administration, Dr. Sudhakar Rumalla, M.D. assessed Plaintiff.  [Tr. at 351].  An x-ray revealed scattered mild degenerative

---

[2] Myalgia is the medical term for muscular pain.  Myositis is inflammation of the muscles; neuralgia is a severe, throbbing, or stabbing pain of the nerves; radiculitis is inflammation of the spinal nerve root; lumbago is a descriptive term for pain in the low to mid back; spondylosis is the stiffening or fixation of the vertebra; cervicalgia is a descriptive term for neck pain; and cervical spinal stenosis is the narrowing of the spinal cavity in the neck.  All definitions were taken from Stedman's Medical Dictionary available from Westlaw.

[3] These medications included oxycodone and a hydrocodone and acetaminophen combination, both habit-forming, narcotic pain-relievers.  Pharmaceutical information was taken from the Physician's Desk Reference.

changes through the lumbar region with a mild degree of scoliosis and evidence of surgery at L5-S1.  [Tr. at 355, 357].  Dr. Rumalla noted the following impressions: chronic lumbosacral syndrome, probable degenerative disk disease, lumbar spondylosis, chronic cervicalgia, mid-back pain, post-anterior cervical fusion, generalized arthralgia, generalized aching, fibromyalgia by history, carpal tunnel syndrome by history, and a post-surgery torn meniscus.  [Tr. at 354].  Dr. Rumalla noted mild to moderate tenderness in her cervical, thoracic, and lumbar spine as well as both knee joints. [Tr. at 354].  Additionally, Plaintiff had difficulty walking on her heels and toes and tandem walking, and she could only partially squat and rise while holding on to a table.  [Tr. 353].  Dr. Rumalla also noted that Plaintiff's ability to extend and flex her spine was mildly limited by discomfort, that muscle power was five for five in all extremities, and that Plaintiff could walk in a straight line without any limp or reeling.  [Tr. at 353].

On November 1, 2010, medical consultant Dr. Yvonne Post, D.O. completed a physical residual functional capacity ("RFC") assessment of Plaintiff.  [Tr. at 387].  In her assessment, Dr. Post noted Plaintiff's diagnosis of fibromyalgia, degenerative disk disease, and history of disketomy.  [Tr. at 380].  Dr. Post assigned Plaintiff a functional ability to perform "light" exertional activities: lifting 20 pounds occasionally and ten pounds frequently; standing or walking six hours out of an eight-hour day; and sitting for six hours out of an eight-hour day. [Tr. at 380-387].

On November 16, 2010, Dr. Ruby completed a questionnaire sent to him by Plaintiff's attorneys.  [Tr. at 396].  Dr. Ruby checked that Plaintiff's pain was constant and in the range from six to nine on a scale of ten, that Plaintiff could sit, walk, and stand for up to one hour in an eight-hour work day, and that she could occasionally lift or carry up to five pounds.  [Tr. at 391-

3

392].  On March 3, 2011, Dr. Roberta Herman, M.D., affirmed Dr. Post's RFC findings.  [Tr. at

400].***Psychological Evaluations***

On September 8, 2010, Dr. Katherine Donaldson performed a psychological evaluation of

Plaintiff.  [Tr. at 360].  Plaintiff reported that she did the laundry, cleaned her house, went

shopping, drove, and prepared meals with her husband's help.  [Tr. at 361].  Dr. Donaldson

diagnosed recurrent, mild Major Depressive Disorder, and noted a fair prognosis for symptom

improvement if Plaintiff received psychological treatment, which Plaintiff had not yet done.  [Tr.

at 364].  On October 22, 2010, Dr. Matthew Snapp, Ph.D, found that Plaintiff had recurring, mild

Major Depressive Disorder, and that Plaintiff had mild restrictions as to the activities of daily

life; mild difficulties maintaining social functioning; and mild difficulties in maintaining

concentration, persistence, or pace.  [Tr. at 366, 369, 376].   On February 6, 2011, Dr. John

Ferguson, Ph.D., affirmed Dr. Snapp's findings.  [Tr. at 398].

## C.  The ALJ's Findings

On June 29, 2012, the ALJ issued a decision unfavorable to Plaintiff.  [Tr. at 31-32].  At

step one of the disability determination, the ALJ found Plaintiff had not engaged in substantial

gainful employment since April 1, 2009, the date of the alleged onset of disability.  [Tr. at 22].

At step two, the ALJ found that Plaintiff's fibromyalgia was a severe impairment under C.F.R.

section 404.1520(c).  [Tr. at 23].  At step three, the ALJ found that Plaintiff's impairment did not

meet or medically equal the severity of either of the listed impairments in section 404, Subpart P,

Appendix 1.  [Tr. at 23].

Before step four, the ALJ determined that Plaintiff has the RFC to perform the full range

of light work: lift or carry 20 pounds occasionally; lift or carry ten pounds frequently; stand or

walk for six hours out of an eight-hour day; and sit for about six hours out of an eight-hour day.

4

[Tr. at 24].  In so finding, the ALJ evaluated both Dr. Ruby's treatment records and the responses to the questionnaire provided to him by Plaintiff's attorney.  [Tr. at 28].  In addition, the ALJ relied on the reports of Drs. Rumalla, Post, Herman, Donaldson, Snapp, and Ferguson.  [Tr. at 24-25, 28-30].

The ALJ found that Dr. Ruby's responses to the questionnaire could not be given controlling weight because they (1) were not consistent with the objective medical and other evidence in the record; (2) did not recommend hospitalization or placement in a sheltered or highly supported living environment; (3) were inconsistent with his own findings or statements in other parts of his report; (4) did not state the objective basis or provide sufficient explanation to support such conclusions, which detracted from their value as the opinions of a treating physician; and (5) were conclusions on issues reserved to the Social Security Commissioner. [Tr. at 28-29].

The ALJ also evaluated Plaintiff's demeanor, behavior, and responses, along with other factors, such as Plaintiff's daily activities, location of pain, factors that aggravated her pain, and the types of medication and treatments she received, to determine the above RFC.  [Tr. at 29]. Along with these factors, the ALJ evaluated Plaintiff's allegations of pain in light of the medical record as a whole and found that the allegations were unsupported by a preponderance of the objective medical findings. [Tr. at 27-28].  At step four, the ALJ determined that Plaintiff was capable of performing her past relevant work.  [Tr. at 30].  Therefore, the ALJ found that Plaintiff did not have a disability as defined in the Social Security Act [Tr. 30].

## II.     APPLICABLE STANDARD

### A.  Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to whether the
Commissioner's position is supported by substantial evidence and whether the Commissioner
applied proper legal standards in evaluating the evidence.  *Greenspan v. Shalala*, 38 F.3d 232,
236 (5th Cir. 1994); 42 U.S.C. §§ 405(g), 1383(C)(3).  Substantial evidence is more than a
scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable
mind might accept as adequate to support a conclusion.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th
Cir. 1995).  Under this standard, the reviewing court does not reweigh the evidence, retry the
issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether
substantial evidence is present.  *Greenspan*, 38 F.3d at 236.

### B.  Disability Determination

The Commissioner uses the following sequential five-step inquiry to determine whether a
claimant is disabled:  (1) an individual who is working and engaging in substantial gainful
activity is not disabled; (2) an individual who does not have a "severe impairment" is not
disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the
regulations will be considered disabled without consideration of vocational factors; (4) if an
individual is capable of performing his past work, a finding of "not disabled" must be made; (5)
if an individual's impairment precludes him from performing his past work, other factors
including age, education, past work experience, and residual functional capacity must be
considered to determine if any other work can be performed.  *Wren v. Sullivan*, 925 F.2d 123,
125 (5th Cir. 1991) (summarizing 20 C.F.R. §§ 404.1520(b)–(f), 416.920 (b)–(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant.

6

*Leggett*, 67 F.3d at 564.  The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled.  *Id.*  If the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform.  *Greenspan*, 38 F.3d at 236.  This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

## III.    DISCUSSION

### A.  Treating Physician Rule

Plaintiff argues in her *Motion for Summary Judgment* that the ALJ failed to follow the treating physician rule when determining Plaintiff's RFC, averring that the rule requires the ALJ to give controlling weight to a treating physician's opinion on the nature and severity of a patient's impairment.  [Doc. 11 at 12].  Plaintiff argues that Dr. Ruby's answers to the questionnaire, as the opinions of the treating physician, should be given controlling weight because they are substantiated by the treatment record and medical tests and are not inconsistent with other medical data.  [Doc. 11 at 13-14].  In the alternative, Plaintiff argues that Dr. Ruby's opinion, even if not given controlling weight, should be given the greatest weight compared to the opinions of other medical professionals, stating that the ALJ offered no good reason for rejecting Dr. Ruby's answers.  [Doc. 11 at 15].

Defendant argues that the ALJ's RFC analysis was correct, as evidenced by the evaluations of Drs. Rumalla, Post, and Herman.  [Doc. 12 at 7].  The Defendant argues that though the ALJ did weigh Dr. Ruby's responses to the questionnaire, the ALJ was correct in discounting those responses as conclusory, insufficiently supported, inconsistent with other

evidence and statements, and inconsistent with Dr. Ruby's decision not to recommend hospitalization or placement of Plaintiff in a shelter or highly supported living environment. [Doc. 12 at 8].

In assessing RFC, "a treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence.'" *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (citation omitted). Even if a treating physician's opinion is not given controlling weight, in many cases it should be given the greatest weight after being weighed using all of the factors provided in 20 C.F.R. § 404.1527. However, "[a]bsent reliable medical evidence from a treating or examining specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in" section 404.1527.  *Id.* at 453 (emphasis in original).  But if the ALJ has reliable medical evidence from an examining specialist to contradict the treating physician, no detailed analysis is required to reject the opinion of the treating physician's views. *Id.*

In the present case, the ALJ had "reliable medical evidence from . . . [an] examining specialist" that contradicted Dr. Ruby's opinion, and, thus, he was entitled to reject Dr. Ruby's responses to the questionnaire without performing a detailed analysis of the responses under section 404.1527.  *See id.*  Moreover, Dr. Rumalla's opinions support the ALJ's conclusions regarding Plaintiff's RFC and non-disability.  [Tr. at 351-57].  And while their opinions as non-examining physicians alone cannot overcome the treating physician rule, the opinions of Drs. Post and Herman support the ALJ's conclusion as well.  [Tr. at 380-97, 400].  This medical

evidence is sufficient to reject the treating physician's opinion.  Therefore, the ALJ's RFC

assessment and finding that Plaintiff was not disabled are supported by substantial evidence.

## B.  Plaintiff's Credibility

   Plaintiff then argues that the ALJ failed to properly evaluate Plaintiff's credibility. [Doc. 11

at 6].  Plaintiff argues that the ALJ used the wrong standard to evaluate Plaintiff's credibility and

failed to provide substantiation for that evaluation.  [Doc. 11 at 17].  Specifically, Plaintiff argues

that the ALJ compared her stated symptoms to the RFC, instead of the medical record.  [Doc. 11

at 17].  Defendant responds that the ALJ correctly evaluated Plaintiff's subjective allegations,

pointing to the ALJ's analysis of the medical record and consideration of other factors, such as

Plaintiff's demeanor, daily life activities, factors that aggravate Plaintiff's pain, and others, to

evaluate her credibility.  [Doc. 12 at 4-5].  In her reply, Plaintiff argues that though the ALJ

summarized some of the findings in the medical record and other factors pertaining to Plaintiff's

impairment, the ALJ did not provide any reasoning as to why these findings refuted Plaintiff's

subjective allegations.  [Doc. 13 at 2].

       In assessing the ALJ's RFC determination,  an "unfavorable credibility evaluation of a

claimant's complaints of pain will not be upheld on judicial review where the uncontroverted

medical evidence shows a basis for the claimant's complaints unless the ALJ weighs the

objective medical evidence and assigns articulated reasons for discrediting the claimant's

subjective complaints of pain."  *Abshire v. Bowen*, 848 F.2d 638, 642 (5th Cir. 1988).  However,

where the medical evidence does not support the degree or intensity of the claimant's subjective

complaints, there exists no "uncontroverted medical evidence" that would require the ALJ to

articulate reasons for discrediting the subjective complaints.  *Jones v. Massanari*, 7:00-CV-0217-

R, 2001 WL 881283, at *6 (N.D. Tex. July 27, 2001) (Buchmeyer, C.J.).

Plaintiff's contention that the ALJ did not give proper credibility to her subjective complaints is without merit. The ALJ was required to give such credibility if "uncontroverted medical evidence show[ed] a basis for the claimant's complaints." *Abshire*, 848 F.2d at 642. In this case, the entirety of the record, including the evaluations of all the physicians that assessed Plaintiff's conditions, places Plaintiff's alleged condition outside the realm of "uncontroverted." [Tr. at 351-57, 380-87, 400]. Even if there were uncontroverted medical evidence, the ALJ articulated reasons for not giving Plaintiff's subjective complaints favorable credibility. He closely observed her demeanor, behavior, responses, facial expressions, body dynamics, reactions to the hearing, her entrance, and her exit. [Tr. at 26]. In light of these observations and in light of the entirety of the medical record, the ALJ found that "the claimant's medically determinable impairments could produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms [were] neither entirely credible, consistent with, nor supported by the preponderance of the medical and other evidence of record." [Tr. at 26]. In either instance, the ALJ correctly evaluated Plaintiff's subject complaints in determining her disability.

## IV.  CONCLUSION

Because the ALJ was not required to analyze the treating physician's conclusions pursuant to section 404.1527, and correctly evaluated Plaintiff's subjective complaints, Defendant's *Motion for Summary Judgment* should be **GRANTED**, while Plaintiff's *Motion for Summary Judgment* should be **DENIED**.

**SO RECOMMENDED** on April 22, 2014.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

10

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

11