**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **SHANNON KAYE WILDER,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | No. 13-CV-3014-P |
| | § | |
| **CAROLYN W. COLVIN,** | § | |
| **Acting Commissioner of Social Security,** | § | |
| | § | |
| **Defendant.** | § | |

**ORDER**

On April 22, 2014, the assigned Magistrate Judge recommended that the Court deny the Motion for Summary Judgment (doc. 10) filed by Plaintiff; grant Defendant's Motion for Summary Judgment (doc. 12), and affirm the Commissioner's decision to deny Disability Insurance Benefits. (*See* Findings, Conclusions, and Recommendation ("FCR"), doc. 14.) Plaintiff timely objected to the recommendation. (*See* Pl.'s Obj'ns to FCR [hereinafter "Obj'ns"], doc. 15.) She objects to findings that the Administrative Law Judge ("ALJ") properly considered the medical opinions of her treating physician and properly evaluated her credibility. (*Id.* at 1-10.) She urges the Court to reverse the decision of the Commissioner and remand her case for further proceedings. (*Id.* at 9.) The Commissioner has not responded to the objections.

After reviewing all relevant matters of record, including the FCR and the filed objections, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(3), and for the reasons that follow, the Court sustains the objection to the finding that the ALJ properly considered the medical opinions of her treating physician. Accordingly, it **GRANTS** Plaintiff's motion, **DENIES** the Defendant's motion, and **REVERSES** the decision to deny Disability Insurance Benefits.

## I. AUTHORITY OF MAGISTRATE JUDGE AND STANDARD OF REVIEW

Section 636(b)(1)(B) of Title 28 of the United States Code grants magistrate judges authority to issue findings and recommendations regarding dispositive motions in cases referred to them. The statute provides for the filing of written objections to proposed findings and recommendations and for a de novo determination of matters "to which objection is made." Objections asserted in accordance with this provision serve "to narrow the dispute" and enable district judges "to focus attention on those issues – factual and legal – that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 & n.6 (1985).

Rule 72(b)(3) of the Federal Rules of Civil Procedure likewise provides for a de novo determination of "any part of the magistrate judge's disposition that has been properly objected to." Rule 72(b)(2) requires the objecting party to file "specific written objections" and grants other parties fourteen days to respond to such objections.

Consistent with § 636(b)(1) and Rule 72(b)(3), the Court reviews the findings and recommendation of the Magistrate Judge in this case. It "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *accord* 28 U.S.C. § 636(b)(1).

## II. BACKGROUND

The Magistrate Judge set out the procedural and factual history, including medical evidence and the decision of the ALJ that became the final decision of the Commissioner. (*See* FCR at 1-5.) The Court will not restate the entirety of that background here. But the following summary places the issues and objections in the proper context.

Plaintiff alleges that she became disabled on April 1, 2009. (Tr. at 149.) The ALJ found that

she retained the residual functional capacity ("RFC") "to perform the full range of light work as defined in 20 C.F.R. § 404.1567[b]."[1] (Tr. at 24.) More specifically, he found that she had the RFC to (1) lift or carry twenty pounds occasionally and ten pounds frequently; (2) stand or walk for six hours; and (3) sit for six hours, with (4) no pushing, pulling, postural, manipulative, visual, communicative, or environmental limitations. (*Id.*) He found Plaintiff not disabled at Step 4 because she could perform past relevant work that did not require activities precluded by her RFC.[2] (Tr. at 30-31.) In doing so, the ALJ accorded greater weight to opinions of State agency physicians, such as Sudhakar Rumalla, M.D., and Katherine S. Donaldson, Psy.D., than to medical opinions of E. Charlie Ruby, D.O., Plaintiff's treating physician since December 5, 2005. (Tr. at 26-30.) The ALJ also found Plaintiff only partially credible. (Tr. at 26.)

### III. OBJECTIONS

The Magistrate Judge found that the ALJ properly considered the opinions of Dr. Ruby and properly determined that Plaintiff was not fully credible and thus recommended that the Court uphold the ALJ's decision. (FCR at 7-10.) Plaintiff objects to both findings. (Obj'ns at 1.) After conducting a de novo review of these issues as required by 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(3), the Court finds that the ALJ improperly considered the opinions of the treating physician, sustains the objection on that issue, reverses the decision of the Commissioner, and remands the case for further consideration.

---

[1] The Court notes that the ALJ's decision is signed by Ralph F. Shilling for the ALJ, Gilbert Rodriguez. (*See* Tr. at 32.) It is unknown what circumstances prompted this unusual procedure. But no one argues that the procedure is improper. For purposes of this case, the Court will not further consider it.

[2] At Step 4 of the five-step evaluative sequence used to determine whether an adult claimant is disabled, the Commissioner must determine whether the claimant has the ability to perform his or her past work. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). The claimant has the burden at Step 4 of the sequential analysis. *Id.*

**A. <u>Evaluating Opinions of Treating Physician</u>**

Plaintiff argues that the ALJ improperly evaluated opinions of her treating physician, Dr. Ruby. (Obj'ns at 1-6.) She contends that the ALJ could not avoid the detailed analysis required by 20 C.F.R. § 404.1527(c)(2)-(6) on grounds that opinions of Dr. Rumalla, an examining specialist, contradicted Dr. Ruby's opinions. (*Id.* at 1.) She argues that Dr. Rumalla did not make any opinion or conclusion regarding work-related limitations and that his silence cannot constitute a contradictory medical opinion. (*Id.* at 2.) In her view, the only opinions that contradict her treating physician's opinions are from non-examining consultants (Yvonne Post, D.O., and Roberta Herman, M.D.), which are insufficient of themselves to reject the opinions of Dr. Ruby. (*Id.* at 2-3.)

Dr. Ruby, has treated Plaintiff at Walnut Grove Family Health Center since at least December 5, 2005. (*See* Tr. at 240.) He has treated Plaintiff for various ailments, including fibromyalgia, joint pain, and back and shoulder problems. (*See* Tr. at 240, 295-309, and 474-75.) On November 16, 2010, he completed a "Multiple Impairment Questionnaire" ("MIQ") in which he set out several diagnoses, including myalgia, shoulder pain, neck and shoulder sprain, and lumbago; a fair prognosis; clinical findings to support the diagnoses (spine tenderness and antalgic gait); Plaintiff's primary symptoms (left arm numbness, lumbar pain, back spasms, and knee pain); and numerous conclusions derived from his evaluation. (*See* Tr. at 389-96.) He did not identify any laboratory or diagnostic test results to demonstrate or support his diagnoses, but instead stated "See Attached." While the exhibit lacks an attachment, the records from Dr. Ruby include an MRI of the cervical spine showing disc protrusions and mild cord compression, a bone density scan showing osteopenia, and an MRI of the lumbar spine showing disc bulging, desiccation, and advanced degenerative disc disease. (*See* Tr. at 487-88, 490, and 496.)

Dr. Ruby opined that, in an eight-hour work day, Plaintiff was limited to (1) sitting for no more than one hour; (2) standing or walking for no more than one hour; and (3) lifting or carrying zero to five pounds occasionally. (Tr. at 391-92.) He likewise opined that she was markedly to moderately limited in her ability to grasp, turn, and twist objections and markedly limited in using her fingers and hands for fine manipulations and reaching with her arms. (Tr. at 392-93.) He viewed Plaintiff's pain or other symptoms as constantly interfering with her attention and concentration. (Tr. at 394.) He also noted that Plaintiff's ability to work at a regular job on a sustained basis was further limited by vision problems and an inability to push, pull, kneel, bend, and stoop. (Tr. at 395.)

The ALJ unquestionably considered these opinions. (*See* Tr. at 24.) But he declined to give them controlling weight apparently for five listed reasons:[3] (1) the "opinions/conclusions do not meet the consistency and well-supported requirements of SSR 96-2p., nor are they consistent with the preponderance of the objective medical and other evidence of record;" (2) Dr. Ruby did not recommend hospitalization or placement in a sheltered living environment; (3) internally inconsistent opinions; (4) inadequately explained opinions; and (5) the opinions were on issues of disability that are reserved for the Commissioner. (Tr. at 28-29.) He accorded the opinions of Dr. Ruby "only the weight merited by the overall evidence from them, in conjunction with the total evidence in the case and other relevant factors." (Tr. at 29 (using more boilerplate language).) After giving "due weight and consideration . . . to the analyses by the State Agency's highly qualified medical and other personnel," the ALJ gave greater weight to their opinions "regarding the severity of the claimant's

---

[3]The ALJ's reasons are unnecessarily hidden within boilerplate language used in his decision. (*See* Tr. at 28-29.) The decision creates additional confusion by using incongruent possessive pronouns, i.e., using "their" or the even more imprecise "their his/her," when presumably referring only to the opinions of Dr. Ruby – a male physician. (*See id.*)

5

physical and mental impairments and residual functional capacity." (*Id.* (same).)

Following nearly identical boilerplate language, the ALJ again explained the weight given to opinions of Dr. Ruby:

> Treating source opinions, such as those of Dr. Ruby, do not meet the consistency and well-supported requirements of SSR 96-2p., nor are they consistent with the preponderance of the objective medical and other evidence of record. However, all opinions/conclusions were accorded the weight merited by the overall evidence from each source, in conjunction with the total evidence in the case and other relevant factors as provided in the regulations.

(Tr. at 30 (using mostly boilerplate language).) And the ALJ again stated that he gave greater weight to the opinions "of consultative physicians, such as Drs. Rumalla and Donaldson." (*Id.*)

Under the applicable regulations, the ALJ must consider and weigh the medical opinions[4] of Dr. Ruby. *See* 20 C.F.R. § 404.1527(b)-(c) (stating that "we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive" and "[r]egardless of its source, we will evaluate every medical opinion we receive"). The regulations provide a six-factor detailed analysis to follow unless the ALJ gives "a treating source's opinion controlling weight." *Id.* § 404.1527(c)(1)-(6).[5] When a treating source has given an opinion on the nature and severity of a patient's impairment, such opinion is entitled to controlling weight if it is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsis-

---

[4]As the regulation explains to claimants: "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). The regulation reserves some issues to the Commissioner "because they are administrative findings that are dispositive of a case" – opinions on such issues do not constitute medical opinions under the regulations. *Id.* § 404.1527(d).

[5]These factors are: (1) the examining relationship; (2) the treatment relationship, including the length of time the physician has treated the claimant, the frequency of examination by the physician, and the nature and extent of the treatment relationship; (3) support for the physician's opinions in the medical evidence of record; (4) consistency of the opinions with the record as a whole; (5) the specialization of the treating physician; and (6) any others factors brought to the ALJ's attention. 20 C.F.R. § 404.1527(c).

6

tent with" other substantial evidence. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (quoting *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (quoting 20 C.F.R. § 404.1527(d)(2)). And "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in [the regulations]." *Id.* at 453. In addition, "if the ALJ determines that the treating physician's records are inconclusive or otherwise inadequate to receive controlling weight, absent other medical opinion evidence based on personal examination or treatment of the claimant, the ALJ must seek clarification or additional evidence from the treating physician in accordance with 20 C.F.R. § 404.1512(e)." *Id.*

When an ALJ finds that opinions of a treating source are not entitled to controlling weight, he or she must consider the six factors set out in the regulations to properly assess the weight to be given to the opinions. *Id.* at 456. For good cause shown, an ALJ may assign little or no weight to an opinion from a treating source. *Id.* at 455-56. "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 456.

The Magistrate Judge recognized that the ALJ did not provide a detailed analysis of the six required factors, but found such analysis not required because the ALJ had competing first-hand evidence that contradicted the opinions of Dr. Ruby. (*See* FCR at 8.) *Newton* indeed eliminates the requirement to provide a detailed analysis when "there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another." 209 F.3d at 458. Here, the ALJ found opinions from unnamed State agency doctors more well-founded,

7

and then listed Drs. Rumalla and Donaldson as representative examples.[6] (Tr. at 29-30.) He also mentioned that Dr. Post found that Plaintiff possessed the functional ability for light exertional activities and that Dr. Herman affirmed that finding. (Tr. at 25.)

The assessment of Plaintiff's RFC is crucial in this case. Many of Dr. Ruby's opinions relate to that RFC. (*See* Tr. at 391-95.) A claimant's RFC "is the most [he or she] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). When a case proceeds before an ALJ, it is the ALJ's sole responsibility to assess the claimant's RFC. *Id.* § 404.1546(c). But that assessment must be "based on all of the relevant medical and other evidence" of record. *Id.* § 404.1545(a)(3). "Usually, the ALJ should request a medical source statement describing the types of work that the applicant is still capable of performing." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). A failure to obtain such statement, however, does not necessarily make the record incomplete. *See id.*; 20 C.F.R. § 404.1513(b)(6). Even in those cases, the appropriate inquiry focuses on "whether the decision of the ALJ is supported by substantial evidence in the record." *Ripley*, 67 F.3d at 557. Substantial evidence is lacking when "the record does not clearly establish" the effect of an impairment or condition on the claimant's ability to work. *Id.* And when substantial evidence is lacking on that issue, the ALJ must obtain a medical assessment of the claimant's RFC. *Id.* at 557-58.

Here, although Dr. Rumalla examined Plaintiff at the request of the social security administration, he made no finding or opinion regarding her RFC or how her impairments limit her physical ability to work. (*See* Tr. at 350-54.) But he did note that Plaintiff "*may be* able to walk 15-20 minutes, stand *maybe* 15-20 minutes, sit 30 minutes, and carry *maybe* 10 pounds from car to house."

---

[6]Dr. Donaldson evaluated Plaintiff's psychological condition. (Tr. at 360.) Because Plaintiff's mental condition is not at issue in this case, the Court need not consider records related solely to psychological evaluations.

8

(Tr. at 350 (emphasis added).)  He assessed "chronic low back pain, neck pain, mild back pain, generalizing aching, generalized joint points, and intermittent numbness in left second and third fingers." (Tr. at 354 (changing some punctuation).)  His recorded impressions are consistent with that assessment and he found the examination "significant for tenderness in cervical spine, thoracic spine, and lumber spine and tenderness in both knee joints." (*Id.*)

Standing alone, the opinions of Dr. Rumalla do not constitute substantial evidence regarding Plaintiff's RFC.  And the opinions are insufficient to reject the RFC opinions of Dr. Ruby.  The opinions of Dr. Rumalla do not appear inconsistent with the limitations stated by Dr. Ruby.  Therefore, contrary to the finding by the Magistrate Judge, the ALJ did not have reliable medical evidence from an examining specialist that contradicted Dr. Ruby's opinions.  Absent such evidence, the ALJ could reject the opinions of Dr. Ruby only after conducting the detailed analysis of the factors set out in § 404.1527.  *See Newton*, 209 F.3d at 453.

The Magistrate Judge also noted that the opinions of Drs. Rumalla, Post, and Herman support the ALJ's RFC conclusions.  (FCR at 8.)  But because Drs. Post and Herman are non-examining physicians, (*see* Tr. at 380 (indicating that Dr. Post was to review file) and 400 (indicating that Dr. Herman had reviewed all evidence in the file); Def.'s Mot. Summ. J. at 7 (conceding that both doctors merely reviewed medical files),[7] their opinions provide no basis to bypass the requisite detailed analysis.  Although Dr. Rumalla examined Plaintiff, his opinions do not contradict the RFC assessments of Dr. Ruby as already discussed.

Under the facts of this case, the ALJ was required to provide a detailed analysis of the six

---

[7] The regulations also recognize that RFC assessments by State agency physicians are considered as statements about what the claimant can still do made by non-examining physicians based on their review of the evidence in the record.  *See* 20 C.F.R. § 404.1513(c).

9

factors. And the ALJ did not do so. But even if an ALJ procedurally errs by not more fully considering and weighing the opinions of a treating physician, reversal and remand is only required when the error affects the substantial rights of the claimant. *See Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012) (applying harmless error analysis to a different type of ALJ error); *Singleton v. Colvin*, No. 3:12-CV-0821-BF, 2013 WL 1562867, at *12 (N.D. Tex. Apr. 15, 2013) (applying harmless error analysis to similar error). Absent an error that affects the substantial rights of a party, administrative proceedings do not require "procedural perfection." *Taylor*, 706 F.3d at 603. Procedural errors affect the substantial rights of a claimant only when they "cast into doubt the existence of substantial evidence to support the ALJ's decision." *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988). Remand is required only when there is a realistic possibility that the ALJ would have reached a different conclusion absent the procedural error. *January v. Astrue*, 400 F. App'x 929, 933 (5th Cir. 2010) (per curiam). For the reasons that follow, the ALJ's consideration and weighing of the opinions of Dr. Ruby has affected the substantial rights of the plaintiff in this action.

Dr. Post is the only agency physician to assess Plaintiff's physical residual functional capacity. But, in reaching her assessment on November 1, 2010, she merely reviewed the medical files. And she did not have access to the MIQ of Dr. Ruby completed about two weeks later. Even without that MIQ, she recognized that the record contained other "medical source statement(s)" regarding Plaintiff's physical capacities that significantly differ from her findings. (Tr. at 386.) She then appears to identify the statement as "8/10 IMCE," which seems to be the opinions of Dr. Rumalla dated in August 2010.[8] (*See id.*) It thus appears that Dr. Post viewed the opinions of Dr. Rumalla

---

[8] Under the heading "ADDITIONAL COMMENTS," Dr. Post again refers to "8/10 IMCE" in addition to making the following notation: "6/10: TTP throughout spine, R shoulder and L knee. No neuro or focal deficits." (Tr. at 387.) The precise meaning or purpose of these additional comments are unclear.

10

as significantly different than her findings. This apparent inconsistency in opinions from the agency's physicians casts some doubt as to whether substantial evidence supports the ALJ's conclusion that Plaintiff is capable of light work. And if Dr. Post is instead attempting to cite to the opinions of Dr. Rumalla as support for her RFC assessment or to explain why other unspecified conclusions about Plaintiff's limitations are not supported by substantial evidence, the opinions of Dr. Rumalla are not substantial evidence regarding Plaintiff's RFC for the reasons already discussed. Consequently, the opinions provide no reason to discount the RFC assessment of Dr. Ruby. Because Dr. Post did not examine Plaintiff, her opinions are entitled to less weight than a treating physician, like Dr. Ruby, who had examined the plaintiff for a period of years. *See* 20 C.F.R. § 404.1527(c). Had the ALJ undertaken the detailed analysis required by the regulations, he would have fully considered these matters.

On the record before it, the Court cannot say that the failure to conduct the detailed analysis is harmless error. Had the ALJ conducted that analysis, there is a realistic possibility that he would have given greater weight to the opinions of the treating physician instead of the opinions of the non-examining physician. There is also a realistic possibility that the ALJ would have sought clarification or additional evidence as contemplated by 20 C.F.R. § 404.1512(e). And, whether the ALJ accepted the opinions of Dr. Ruby or sought additional evidence, such change would cast into doubt the existence of substantial evidence to support the ALJ's current decision.

To reject the RFC opinions without a contrary opinion from a treating or examining source would require usurping the physicians' role. *See Newton v. Apfel*, 209 F.3d 448, 453-58 (5th Cir. 2000). As in *Newton*, "[t]his is not a case where there is competing first-hand medical evidence and the ALJ finds as a factual matter that one doctor's opinion is more well-founded than another." *See*

11

209 F.3d at 458. Nor is this "a case where the ALJ weighs the treating physician's opinion on disability against the medical opinion of other physicians who have treated or examined the claimant and have specific medical bases for a contrary opinion." *See id.*

Under a de novo review of the administrative record, the Court finds that the ALJ improperly considered and weighed the opinions of Plaintiff's treating physician. Contrary to the finding of the Magistrate Judge, the ALJ lacked reliable medical evidence from an examining physician that contradict Dr. Ruby's specific opinions set out in her MIQ. The ALJ failed to perform the detailed analysis required by 20 C.F.R. § 404.1527. Had he conducted that analysis and properly considered and weighed the opinions of Dr. Ruby there a realistic possibility that he would have reached a different conclusion in his decision. Consequently, this procedural error casts doubt on the existence of substantial evidence to support the decision to deny benefits. Therefore, Plaintiff's substantial rights have been affected by the consideration and weight accorded to the opinions of Dr. Ruby by the ALJ. This procedural error is not harmless.

For the foregoing reasons, the ALJ improperly rejected opinions stated by Plaintiff's treating physician, Dr. Ruby. The Court sustains the objection of Plaintiff as it relates to evaluating and weighing those opinions. On remand, the ALJ must properly consider the opinions of Dr. Ruby consistent with this order and the applicable social security regulations and rulings.

**B. Credibility**

The Magistrate Judge found that the ALJ properly determined Plaintiff's credibility. (FCR at 9-10.) Plaintiff objects to this finding. (Obj'ns at 6-9.) She argues that the ALJ merely summarized standards applicable to his credibility determination rather than articulating his reasons for rejecting her subjective complaints. (Obj'ns at 7-8.) She further argues that the ALJ applied the

wrong standard for evaluating her credibility to the extent he found her statements inconsistent with a predetermined RFC. (*Id.* at 8.)

Before determining Plaintiff's credibility, the ALJ noted that she had received unemployment benefits after the alleged onset of her disability, she had not been hospitalized or undergone physical therapy or rehabilitation for her impairments, she had not applied for indigent care, and was able to drive, attend church, shop once a week, cook, occasionally do dishes, crochet, and perform some household chores. (*See* Tr. at 26.) He further noted that he "closely observed claimant's demeanor and behavior, responses and manner of responses to questions, facial expressions and body dynamics, reactions in and to the hearing proceedings, and entrance and exit." (*Id.*) He emphasized, however, that his "observations are only one factor, among many, on which [he] relied in reaching a conclusion regarding the credibility of claimant's allegations and residual functional capacity." (*Id.*)

The ALJ also noted that Plaintiff had "indicated she is able to sit 10 or 20 minutes, stand 10 minutes and walk 10-15 minutes before experiencing pain in her lower back." (*Id.*) In finding her not entirely credible, he stated:

> After considering, evaluation [sic], analyzing and weighing all of the evidence of record, I find that the claimant's medically determinable impairments could produce the alleged symptoms, but that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are neither entirely credible, consistent with, nor supported by the preponderance of the medical and other evidence of record.

(*Id.*) In the next paragraph, the ALJ likewise found "the allegations of disabling physical and mental limitations in claimant's ability to perform basic work-related activities are neither credible, nor consistent with, nor supported by the preponderance of the medical and other evidence of record" after reviewing "all of the claimant's complaints and symptoms, and the extent to which they can

13

reasonably be accepted as consistent with the objective medical and other evidence of record, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p." (*Id.*) And in a later paragraph, the ALJ stated that he "cannot find the claimant's [[and/or] others'] allegations credible, nor to result in limitations additional to the ones stated."[9] (*Id.* at 28.) Notably, earlier in his decision, the ALJ discussed Plaintiff's receipt of unemployment benefits after the alleged onset of her disability and found that the necessary representations for such benefits, i.e., "that she was ready, willing, and able to work during that time . . . she received unemployment benefits," undermined her credibility. (*Id.* at 23.)

Citing Seventh Circuit precedent, Plaintiff contends that the template or boilerplate language used by the ALJ in this case is insufficient. (Obj'ns at 8-9 (citing *Bjornson v. Astrue*, 671 F.3d 640, 645-46 (7th Cir. 2012); *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012)).) But, even if boilerplate language standing alone may not support a credibility finding, use of such language is an insufficient reason for reversal when the ALJ provides an analysis for reaching the credibility determination. *See Drake v. Colvin*, No. 3:12-CV-70-BN, 2013 WL 5207186, at *4 (N.D. Tex. Sept. 17, 2013) (distinguishing similar decisions of the Seventh Circuit). Under Fifth Circuit precedent, "an ALJ's assessment of a claimant's credibility is accorded great deference" when supported by substantial record evidence. *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000); *accord Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990). And, although circumstances may require ALJs to articulate their reasons for finding subjective complaints not credible, they need not follow any formalistic rule or language. *See Falco v. Shalala,* 27 F.3d 160, 163-64 (5th Cir. 1994).

---

[9]Given the bracketed language and lack of specifics to the claimant in this case, this statement of the ALJ is a particularly egregious use of template language.

In this case, it is abundantly clear that the ALJ extensively used boilerplate or template language in his decision. The chosen manner creates unnecessary uncertainty and confusion in the decision. But it does not appear that the ALJ found Plaintiff's statements inconsistent with any predetermined RFC. Nevertheless, it does appear that the failure to properly consider the opinions of Plaintiff's treating physician played a significant role in the ALJ's credibility determination. (*See* Tr. at 26-28 (noting inconsistencies between her statements regarding her limitations and ability to work and the medical record). On the facts of this case, the Court cannot find that substantial evidence supports the ALJ's credibility finding given the failure to properly consider the opinions of Dr. Ruby. Accordingly, the ALJ shall assess Plaintiff's credibility on remand.

### IV.  CONCLUSION

Having conducted a de novo review and determination as to the issues to which Plaintiff has specifically objected in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(3), the Court hereby sustains Plaintiff's objection regarding the consideration given to her treating physician as stated herein. Accordingly, it **DENIES** Defendant's Motion for Summary Judgment (doc. 12), **GRANTS** the Motion for Summary Judgment (doc. 10) filed by Plaintiff, and **REVERSES** the Commissioner's decision to deny Disability Insurance Benefits to Plaintiff. For the reasons stated herein, the Court **REMANDS** this action for further proceedings consistent with this order.

**SO ORDERED this 30th day of June, 2014.**

_____
**JORGE A. SOLIS**
**UNITED STATES DISTRICT JUDGE**